UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MARY ANN ALVARADO,

        Plaintiff,

v.                                        Case No. 5:19-CV-0106-JKP

TEXAS HEALTH AND HUMAN
SERVICES COMMISSION (THHSC),
Operating as the San Antonio State
Supported Living Center, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has under consideration *Defendants' Motion to Dismiss Plaintiff's Original Complaint* (ECF No. 12). The motion is ripe for ruling. For the reasons that follow, the Court grants the motion in part and denies it in part.

## I. BACKGROUND

In February 2019, Plaintiff commenced this civil action asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and state law. *See* Pl.'s Orig. Compl. (ECF No. 3) ¶ 7. She names as defendants Texas Health and Human Services Commission ("THHSC") operating as the San Antonio State Supported Living Center, a political subdivision of the State of Texas, and Cheryl Rhodes who is sued in both her individual and official capacities. *Id.* at 1-2. She asserts (1) pursuant to § 1983, violations of her due process rights under the Fourteenth Amendment to the United States Constitution;[1] (2) violation of her rights under the Due Course Clause of the Texas Constitution; (3) breach of contract by THHSC; (4) intentional infliction of emotional distress ("IIED") by

---
[1] Plaintiff initially appeared to state separate claims under § 1983 and due process but clarified in response to the motion that the due process claims arise under § 1983.

Rhodes; (5) negligent hiring, training, and supervision by THHSC; and (6) retaliatory discharge under Title VII by THHSC. *See id.* ¶¶ 62-107. She seeks compensatory and punitive damages and an injunction forbidding THHSC from violating Title VII rights. *Id.* at 45-46.

Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). In an abundance of caution, they first point out that, to the extent Plaintiff seeks to separately sue the San Antonio State Supported Living Center, she cannot do so because it is not a separate legal entity capable of being sued.[2] Although they initially argue broadly that the Court lacks jurisdiction over all claims, the briefing is not quite so broad. At no point do Defendants address any basis – jurisdictional or otherwise – to dismiss the asserted Title VII claim. They specifically argue that, based upon Eleventh Amendment immunity, the Court lacks jurisdiction over (1) Claims 1, 2, 3, and 5 against THHSC; (2) Claim 1 asserted against Rhodes in her official capacity; and (3) Claims 2 and 4 asserted against Rhodes in either capacity. Pursuant to Rule 12(b)(6), they argue that Rhodes enjoys qualified immunity against Plaintiff's due process claims under 42 U.S.C. § 1983 (Claim 1) to the extent Plaintiff sues her in her individual capacity and that Plaintiff has otherwise failed to state a due process claim upon which relief can be granted.

In response, Plaintiff agrees to the jurisdictional dismissal of Claims 2, 3, and 5 as to THHSC. She also states that she has no objection to granting the motion as to those claims against both Defendants. But she contends that Rhodes is not entitled to immunity against Claim 4 in either her individual or official capacity. In addition, Plaintiff disputes the Eleventh Amendment argument regarding Claim 1; expresses reliance on *Ex parte Young*, 209 U.S. 123 (1908) to overcome asserted immunity; and seeks leave to amend to include the necessary requests for prospective relief to invoke *Ex parte Young*. Plaintiff argues that once she is permitted to amend her

---

[2]Plaintiff does not address this concern in response to the motion. But at no time does she indicate that she sues the San Antonio State Supported Living Center separately from THHSC. Nor does the Court read the complaint as an attempt to separately sue a non-jural entity. Accordingly, THHSC and Rhodes are the only defendants in this action.

complaint, the Court will have jurisdiction over her § 1983 claims. She also argues that Rhodes is not entitled to qualified immunity; she has stated plausible Fourteenth Amendment claims; and, if further factual detail is necessary, she seeks leave to amend her complaint.

## II. JURISDICTION

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants seek to dismiss various claims based on sovereign immunity under the Eleventh Amendment. Whether the Eleventh Amendment bars a claim due to sovereign immunity raises a jurisdictional challenge. *See City of Austin v. Paxton*, ___ F.3d ___, ___, No. 18-50646, 2019 WL 6520769, at *2 (5th Cir. Dec. 4, 2019).

Plaintiff has no objection to granting the motion to dismiss as it relates to Claims 2, 3, and 5. But she disagrees and urges the preservation of Claim 4 to the extent Rhodes "was not acting under the imprimatur of policies and regulations" of THHSC. And she disagrees that the Court lacks subject matter jurisdiction over Claim 1.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). By first considering a Rule 12(b)(1) motion, courts avoid "prematurely dismissing a case with prejudice" when it lacks jurisdiction. *Id.* A "court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

"In most cases, Eleventh Amendment sovereign immunity bars private suits against non-consenting states in federal court." *City of Austin*, ___ F.3d at ___, 2019 WL 6520769, at *2 (citing *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011); *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). Furthermore, "sovereign immunity also prohibits suits against state officials or agencies that are effectively suits against a state." *Id.* Thus, based upon sovereign immunity under the Eleventh Amendment, federal courts lack "jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015) (quoting *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 962 (5th Cir. 2014)); *accord City of Austin*, ___ F.3d at ___, 2019 WL 6520769, at *2.

Congress did not abrogate state sovereign immunity by enacting the Civil Rights Act of 1871, 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 340-45 (1979); *Price v. Shorty*, 632 F. App'x 211, 212 (5th Cir. 2016) (per curiam). Nor has Texas consented to suit under § 1983. *NiGen Biotech, L.L.C.*, 804 F.3d at 394. While there is a waiver of immunity under the Texas Constitution, such waiver "is only applicable to Article I, § 17," which is not at issue in a case asserting only a violation "of the due-course-of-law provision in the Texas Constitution," Article I, § 19. *Banik v. Tamez*, No. 7:16-CV-00462, 2017 WL 2505653, at *26 (S.D. Tex. June 9, 2017). Nevertheless, by enacting the Texas Tort Claims Act ("TTCA"), Texas has provided "a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). And because plaintiffs would attempt to circumvent the TTCA's "damages cap or other structures by suing governmental employees," the Texas "Legislature created an election-of-remedies provision"

designed to "prevent such circumvention, and to protect governmental employees." *Id.* at 656.

Defendants invoke the election-of-remedies provision of the TTCA, Tex. Civ. Prac. & Rem. Code Ann. § 101.106, for dismissing Claim 4 alleging IIED. When a plaintiff sues the governmental unit, the suit "constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." *Id.* § 101.106(a). Similarly, when a plaintiff files "suit against any employee of a governmental unit," such suit "constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents." *Id.* § 101.106(b). Furthermore, when "a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." *Id.* § 101.106(e). And § 101.106(f) provides for dismissal of a government employee in certain circumstances and that section applies even when both the employee and governmental unit are sued. *See Garcia*, 253 S.W.3d at 659.

When alleged state tort claims are based on conduct within the general scope of an individual's employment with a governmental unit and the plaintiff could have brought the claims against the employer, a suit against the employee is limited to an official capacity action notwithstanding any allegation that the plaintiff seeks to proceed against the employee in his or her individual capacity. Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f); *Graham v. Dallas Area Rapid Transit*, 288 F. Supp. 3d 711, 747 (N.D. Tex. 2017). *Garcia* provides the following apt overview of the election-of-remedies provision:

> Under the Tort Claims Act's election scheme, recovery against an individual employee is barred and may be sought against the governmental unit only in three instances: (1) when suit is filed against the governmental unit only, [Tex. Civ. Prac. & Rem. Code Ann.] § 101.106(a); (2) when suit is filed against both the govern-

5

mental unit and its employee, *id.* § 101.106(e); or (3) when suit is filed against an employee whose conduct was within the scope of his or her employment and the suit could have been brought against the governmental unit, *id.* § 101.106(f). When suit is filed against the employee, recovery against the governmental unit regarding the same subject matter is barred unless the governmental unit consents to suit. *Id.* § 101.106(b). Because the decision regarding whom to sue has irrevocable consequences, a plaintiff must proceed cautiously before filing suit and carefully consider whether to seek relief from the governmental unit or from the employee individually.

253 S.W.3d at 657. In their motion to dismiss, Defendants invoke subdivisions (a), (e), and (f) of § 101.106.

By amending § 101.106 "as part of a comprehensive effort to reform the tort system" in 2003, the Legislature's "apparent purpose was to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable." *Id.* This required irrevocable election "narrows the issues for trial and reduces delay and duplicative litigation costs." *Id.* The election-of-remedies provision identifies some circumstances when a suit against a state official or employee is effectively against the state and may be barred by sovereign immunity.

Because § 101.106(f) limits an action against a governmental employee to that employee's official capacity, the action is in effect a suit against the employer. Consequently, an employee's motion to dismiss under § "101.106(f) challenges the trial court's subject-matter jurisdiction." *Rivera v. Garcia*, No. 04-18-00842-CV, 2019 WL 3432099, at *1 (Tex. App. – San Antonio, July 31, 2019, no pet. h.); *accord Curley v. Gonzalez*, No. 3:15-CV-1341-L, 2017 WL 4351073, at *6 (N.D. Tex. Sept. 30, 2017) (noting that, because a § 101.106(f) "dismissal involves immunity, it appears to be a jurisdictional matter"). Similarly, a § 101.106(e) motion by the governmental unit to dismiss an employee appears to reflect that the action is effectively a suit against the employer alone and constitutes a jurisdictional challenge based on sovereign im-

munity. *See Lewis-Piccolo v. City of Houston*, No. CV H-16-2897, 2017 WL 2644211, at *5 (S.D. Tex. June 1, 2017) (recommendation of Mag. J.) (noting that a governmental employee has "derivative immunity pursuant to Tex. Civ. Prac. & Rem. Code § 101.06(e)") *adopted by* 2017 WL 2633592 (S.D. Tex. June 19, 2017); *McHenry v. Stinnett Police Dep't*, No. 2:13-CV-0228-J, 2014 WL 4810025, at *1 (N.D. Tex. Sept. 25, 2014) (noting that a dismissal under § 101.106(e) is "for want of jurisdiction"); *Pishko v. Yurttas*, No. 10-13-00029-CV, 2013 WL 5890045, at *2 (Tex. App. – Waco, Oct. 31, 2013, pet. denied) (§ 101.106(e) raises "a question of immunity and thus subject-matter jurisdiction").[3]

Nevertheless, as recognized by the parties, the Supreme Court created an exception to sovereign immunity in *Ex parte Young*, 209 U.S. 123 (1908). Under this exception, "the Eleventh Amendment does not bar suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). However, the exception only applies when the plaintiff names "individual state officials as defendants in their official capacities." *Id.* Under this exception, "a state official attempting to enforce an unconstitutional law 'is stripped of his official clothing and becomes a private person subject to suit.'" *NiGen Biotech, L.L.C.*, 804 F.3d at 394 (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)). "For the exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *City of Austin*, ___ F.3d at ___, 2019 WL 6520769, at *2 (quoting *Young*, 209 U.S. at

---

[3] However, at least one court, has held that a dismissal under § 101.106(e) is not based upon jurisdiction and results in a dismissal with prejudice. *See Davis v. City of Dallas, Tex.*, No. 3:16-CV-2548-L, 2018 WL 1509166, at *2 (N.D. Tex. Mar. 27, 2018). Notably, the same judge issued *Curley* and *Davis*. There may be valid reasons for differentiating between motions to dismiss under subparagraphs (e) and (f). And there may be persuasive reasons for considering motions under § 101.106(e) to be jurisdictional and thus invoking Rule 12(b)(1) or non-jurisdictional and invoking Rule 12(b)(6). But, for purposes of the motion before it, the Court sees no need to definitively resolve the issue and will assume without deciding that a dismissal under § 101.106(e) is jurisdictional in nature and properly addressed under the rubric of Rule 12(b)(1).

7

157). Whether the exception applies "does not require an analysis of the merits of the claim." *Id.* (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 646 (2002)). Instead, the courts "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (citation and internal quotation marks omitted).

Plaintiff concedes that her complaint seeks only monetary damages except for her claim under Title VII and that jurisdiction is lacking as to Claims 2, 3 and 5 asserted against THHSC and Claim 2 asserted against Rhodes in her official capacity.[4] As a state agency, THHSC enjoys Eleventh Amendment immunity against monetary damages. Similarly, as an employee of a state agency, Rhodes enjoys the same immunity to the extent she is sued in her official capacity or the claims are otherwise effectively against the state. Consequently, under the complaint now before the Court, Eleventh Amendment immunity protects THHSC against Claims 1, 2, 3, and 5, and Rhodes enjoys that immunity against Claims 1, 2, and 4 to the extent the claims are effectively against the state. To that extent, the Court lacks subject matter jurisdiction over these claims as they currently exist in Plaintiff's operative pleading.

Plaintiff, however, disputes that immunity protects Rhodes against Claim 4 in either her individual or official capacities. Courts recognize that the TTCA provides no waiver of immunity for intentional torts, such as intentional infliction of emotional distress, and suits against government employees are subject to dismissal under § 101.106(f). *See*, *e.g.*, *Richardson v. Univ. of Tex. Sys.*, No. 5:19-CV-271-XR, 2019 WL 5306782, at *3-4 (W.D. Tex. Oct. 18, 2019); *Da-*

---

[4]Plaintiff has also effectively withdrawn Claim 2 as asserted against Rhodes in her individual capacity by stating that she has no objection to dismissal of that claim. Although it is unclear whether the agreed dismissal of such claim is on jurisdictional grounds, it is clear that dismissal is proper. There is "no cognizable action for damages under the Texas Constitution," *Ray v. Houston Indep. Sch. Dist.*, Civ. A. No. H-10-312, 2010 WL 2545577, at *4 (S.D. Tex. June 21, 2010); *Sadik v. Univ. of Houston*, No. CIV.A. H-03-4296, 2005 WL 1828588, at *9 (S.D. Tex. Aug. 1, 2005), and Plaintiff concedes that her operative complaint only seeks monetary damages for this claim.

*vidson v. AT&T Mobility, LLC*, No. 3:17-CV-0006-D, 2019 WL 486170, at *8-11 (N.D. Tex. Feb. 7, 2019); *E.G. by Gonzalez v. Bond*, No. 1:16-CV-0068-BL, 2016 WL 11258226, at *4-7 (N.D. Tex. Aug. 31, 2016) (recommendation of Mag. J.) *adopted by* 2017 WL 129019 (N.D. Tex. Jan. 13, 2017).

In this case, Rhodes has moved for dismissal under § 101.106(f) and is unquestionably a government employee, Plaintiff's suit against her is based on conduct within the scope of her employment, *see Tipps v. McCraw*, 945 F. Supp. 2d 761, 766-67 (W.D. Tex. 2013) (discussing scope of employment in context of § 101.106(f)), and the suit could have been brought against the government employer under the TTCA, *see Franka v. Velasquez*, 332 S.W.3d 367 (Tex. 2011) (holding that, for purposes of § 101.106(f), a claim could have been brought under the TTCA against the governmental entity even if the TTCA has not waived immunity from suit for such claim). To the extent § 101.106(f) applies when the plaintiff sues both the governmental unit and its employee, Plaintiff's IIED claim is "barred by the Texas Tort Claims Act." *Tipps*, 945 F. Supp. 2d at 768. It does not matter whether Plaintiff sues Rhodes in her individual or official capacity, as an IIED claim against her in either capacity remains subject to dismissal under § 101.106(f). *See id.* at 766-67. Indeed, when § 101.106(f) applies, the action against the governmental employee is limited to the employee's official capacity. *Graham v. Dallas Area Rapid Transit*, 288 F. Supp. 3d 711, 747 (N.D. Tex. 2017). Moreover, because the TTCA excludes intentional torts from its limited waiver of immunity, Plaintiff's IIED claim is not "viable under Texas law," even if the government employer had been substituted for the employee as the responsible defendant. *Id.* at 747-48.

Furthermore, if § 101.106(f) is inapplicable due to the plaintiff suing the governmental unit in addition to the employee, § 101.106(e) unquestionably entitles the employee to dismissal

9

on motion from the governmental unit. An employee, such as Rhodes, is entitled to "immediate" dismissal from a suit filed under the Texas Tort Claims Act upon the filing of a motion to dismiss by the employing governmental unit. *Austin State Hosp. v. Graham*, 347 S.W.3d 298, 301 (Tex. 2011) (per curiam). THHSC joined its employee in moving to dismiss the IIED claim asserted against Rhodes.

In summary, Claims 1, 2, 3, and 5 asserted against THHSC and Claims 1, 2, and 4 asserted against Rhodes in her official capacity are subject to dismissal for lack of jurisdiction under the operative complaint filed in this action. Moreover, by state statute, Claim 4 appears limited to Rhode's official capacity, but § 101.106(e) provides for Rhodes' dismissal with respect to that claim whether Plaintiff proceeds against her in her official or individual capacity. It also appears that Plaintiff has conceded to the dismissal of Claim 2 in all respects.

### III. RULE 12(b)(6) MOTION TO DISMISS

Defendants also argue that Plaintiff's due process claims asserted under 42 U.S.C. § 1983 fail to state a claim for relief and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). With respect to Rhodes in her individual capacity they invoke qualified immunity as a defense to the claims. Further, they assert that Plaintiff has not alleged a sufficient property or liberty interest to state a plausible procedural due process claim. They assert that Plaintiff's substantive due process claim fails because Plaintiff has alleged nothing that "shocks the conscience."

Plaintiff contends that through her complaint she has sufficiently alleged a violation of clearly established, federally guaranteed rights and demonstrated that Rhodes' conduct was objectively unreasonable. She further contends that she has stated a cognizable due process claim while conceding that she has additional facts to bolster the liberty-interest aspect of such claim, i.e., difficulty securing gainful employment.

Under Fed. R. Civ. P. 12(b)(6), litigants may move to dismiss asserted claims for "failure

to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). Furthermore, when ruling on a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Facts alleged by the plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a de-

fendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). "[T]here can be no § 1983 liability unless the plaintiff has "suffered a constitutional violation . . . at the hands of . . . a state actor." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc).

Accordingly, for a § 1983 claim to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the plaintiff must allege that (1) a state actor, i.e., a person or entity acting under color of state law, (2) deprived the plaintiff of a federal constitutional right." *Reitz v. City of Abilene*, No. 1:16-CV-0181-BL, 2017 WL 3046881, at *11 (N.D. Tex. May 25, 2017) (recommendation of Mag. J.) *adopted by* 2017 WL 3034317 (N.D. Tex. July 17, 2017); *accord Calhoun v. Mejia*, No. A-08-CA-135-SS, 2008 WL 11411254, at *3 (W.D. Tex. May 20, 2008) (quoting § 1983). And when a "motion to dismiss raises the defense of qualified immunity, the plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm . . . alleged and that defeat a qualified immunity defense with equal specificity.'" *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) (quoting *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014)), *cert. denied*, 138 S. Ct. 739 (2018).

Because the Court lacks jurisdiction over the § 1983 claim as asserted against THHSC, it declines to consider whether Plaintiff has stated a claim against that entity which would survive dismissal under Fed. R. Civ. P. 12(b)(6). Thus, the only issue remaining under Rule 12(b)(6) is whether Plaintiff has stated a § 1983 claim against Rhodes in her individual capacity, which also depends on whether Plaintiff has overcome Rhodes' assertion of qualified immunity.

At the outset, this Court notes its agreement with its sister court in the Northern District of Texas that "a motion under Fed. R. Civ. P. 12(b)(6) is certainly a poor vehicle for resolving claims of qualified immunity." *See Reitz*, 2017 WL 3046881, at *12. This is so, at least in part, because plaintiffs have no need to "anticipate the immunity defense" when filing their complaint. *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998); *accord Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc) (holding that plaintiffs are not required to "fully anticipate the defense in his complaint at the risk of dismissal under Rule 12"). Nevertheless, while "most cases should follow the typical sequence of an answer, followed by a Rule 7(a) reply if necessary, and a Rule 12(c) or Rule 56 motion, the particulars of a case permit proper resolution of the qualified immunity issues through a Rule 12(b)(6) motion." *Reitz*, 2017 WL 3046881, at *14. But, naturally, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012). In the context of a motion to dismiss, plaintiffs carry this burden when their operative pleading alleges that (1) "defendants committed a constitutional violation under current law" and (2) "the defendants' actions were objectively unreasonable in light of the law that was clearly

established at the time of the actions complained of." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)). Of course, to comply with *Iqbal* and *Twombly*, the factual allegations need only present a plausible constitutional violation. And the Court views the actions of a defendant for objective unreasonableness as alleged in the operative pleading, not as it would on summary judgment. As the Supreme Court recognized long ago,

> the legally relevant factors bearing upon the [qualified immunity] question will be different on summary judgment than on an earlier motion to dismiss. At that earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for "objective legal reasonableness." On summary judgment, however, the plaintiff can no longer rest on the pleadings, and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [qualified immunity] inquiry.

*Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (citation omitted); *accord McClendon*, 305 F.3d at 323.

Plaintiff has clearly alleged that Rhodes violated her substantive and procedural due process rights. It is the "touchstone of due process" that governmental action not be taken arbitrarily against individuals "whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective," i.e., the substantive due process guarantee. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) (citations omitted). But in the latter context, "the cognizable level of executive abuse of power" which may qualify as conduct violating substantive due process must be of a kind that "shocks the conscience." *Id.* at 846-47. This is a sizeable requirement. And, in general, the state official must have "at a minimum acted with deliberate indifference toward the plaintiff." *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 880 (5th Cir. 2004) (citation omitted). Plaintiff's factual allegations do not approach the level necessary to state a plausible claim for a substantive due process violation. Consequent-

ly, that claim is dismissed and there is no further need to address qualified immunity as to the substantive due process portion of Plaintiff's § 1983 claim.

However, Plaintiff's factual allegations with respect to her procedural due process claim appear sufficient to state a plausible claim. "The due process clause protects against arbitrary deprivation of both property and liberty interests." *Wells v. Doland*, 711 F.2d 670, 675 (5th Cir. 1983). "To state a Fourteenth Amendment due process claim under § 1983, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)). This is a fairly low bar when compared to the necessary elements of a substantive due process violation.

In this case, Plaintiff has alleged both a protected liberty interest in her reputation and a protected property interest in her continued employment. She identifies an employee handbook as creating a protected property interest and identifies her termination as governmental action that deprived her of that interest. Based on that handbook, Plaintiff has a plausible protected property interest in her continued employment. For purposes of a Rule 12(b)(6) motion to dismiss, such handbook provides a plausible basis to find that the plaintiff has "a legitimate claim of entitlement" to continued employment that stems from an independent source rather than an abstract need or desire. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Furthermore, even without a constitutionally protected property interest, the "liberty protected by the due process clause encompasses an individual's freedom to work and earn a living." *Wells*, 711 F.2d at 676. Identifying a liberty interest in one's reputation satisfies the first prong of *Gentilello*, but Plaintiff must also allege that the governmental action, i.e., termination in this case, deprived her of that interest. For purposes of summary judgment,

> [t]o establish a liberty interest sufficient to implicate the fourteenth amendment's safeguards, the employee must show not only that he [or she] has been stigmatized, but that he [or she] was stigmatized in or as a result of the discharge process, that the charges were made public, and that he [or she] was denied a meaningful hearing to clear his [or her] name.

*Wells*, 711 F.2d at 676 (citations omitted). But this case has not yet reached the summary judgment stage. To survive a motion to dismiss, Plaintiff must allege (1) stigmatization (2) resulting from the discharge process (3) through public charges (4) without a meaningful hearing to clear her name.

In ¶ 76 of her complaint, Plaintiff asserts that her liberty interests were affected by the termination decision. But the complaint falls short of alleging sufficient facts to support a procedural due process claim based on governmental action depriving her of a liberty interest. While she has identified her reputation as the protected liberty interest, her termination as the government action, and the charges against her were false and unsupported, she fails to allege enough facts to satisfy the stigmatization element set forth in items one through four noted above.

In summary, the Court finds Plaintiff's alleged facts sufficient to state a plausible procedural due process claim based on a protected property interest, but the complaint lacks sufficient facts to state a procedural due process claim based on a protected liberty interest or to state a plausible substantive due process violation. Based on these findings, the Court has no need to address qualified immunity except as it relates to the procedural due process claim based on the alleged property interest.

The Court first notes that Plaintiff does not specifically state that Rhodes' actions were objectively unreasonable. Nevertheless, a review of Rhodes' conduct as alleged in the complaint, satisfies Plaintiff's burden to claim that such actions were objectively unreasonable. Through the lens of a motion to dismiss, Plaintiff's original complaint contains enough facts to overcome the

assertion of qualified immunity as to the procedural due process claim based on Plaintiff's alleged property interest in her continued employment.

## IV. LEAVE TO AMEND

Multiple times in response to the motion, Plaintiff asks for leave to amend to cure recognized or potential pleading deficiencies. She could have avoided any need for leave of court had she simply filed an amended complaint within twenty-one days of service of the motion. *See* Fed. R. Civ. P. 15(a)(1) (setting requirements for amending as a matter of course). When a party foregoes amending as a matter of course, the party may amend prior to trial "only with the opposing party's written consent" or leave of court, which should be freely given "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). Whether to grant leave under Rule 15(a)(2) is within the court's discretion. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *EEOC v. Serv. Temps Inc.*, 679 F.3d 323, 333 (5th Cir. 2012).

Not only could Plaintiff have amended her complaint as a matter of course, but this case remains at an early stage of litigation, there has been no undue delay or dilatory motive on Plaintiff's part, and there is no apparent prejudice to Defendants. In these circumstances, granting leave to amend to cure alleged pleading deficiencies in response to a motion to dismiss may be warranted absent a futile amendment.

Based upon the briefing before the Court, Plaintiff appears to have no intent to further pursue Claims 2, 3, or 5. In addition, Plaintiff cannot cure the jurisdictional issue with Claim 4 through amendment. Nor does it appear that Plaintiff can cure the jurisdictional issue with respect to Claim 1 by including a request for prospective injunctive or declaratory relief in an amended complaint. First, for the *Ex parte Young* exception to apply, the complaint must not only seek prospective relief but also allege "an ongoing violation of federal law." *City of Austin v. Paxton*, ___ F.3d ___, ___, No. 18-50646, 2019 WL 6520769, at *2 (5th Cir. Dec. 4, 2019). The

"complaint must allege that the defendant *is violating* federal law, not simply that the defendant has done so." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). Plaintiff's alleged violation of federal law does not appear to be ongoing. She appears to allege a discrete violation that has already occurred. Additionally, because Plaintiff asserts a claim under Title VII, which "has a detailed remedial scheme," she is unable to use *Ex parte Young* to obtain injunctive relief under § 1983. *See Simmons v. Tex. Water Dev. Bd.*, No. A-05-CA-432 LY, 2005 WL 4440406, at *6 (W.D. Tex. July 24, 2006) (recommendation of Mag. J.) *accepted by* 2006 WL 8432068 (W.D. Tex. Aug. 23, 2006). And because "the *Ex parte Young* doctrine only reaches alleged violations of *federal* law," *NiGen Biotech, L.L.C.*, 804 F.3d at 394, Plaintiff cannot rely on the exception to cure a jurisdictional issue with respect to her state claims.

Under the circumstances before it, the Court sees no basis to exercise its discretion to permit Plaintiff to allege a claim for prospective relief against either defendant. But an amendment does appear warranted with respect to Plaintiff's asserted procedural due process claim based on a protected liberty interest in her reputation. In response to the motion, Plaintiff concedes some pleading deficiencies with respect to this claim. At this point, the Court cannot say that Plaintiff has alleged her best case on that claim. Furthermore, given the various rulings in this memorandum opinion and order, an amendment appears warranted to have Plaintiff omit claims that have not survived Defendants' motion to dismiss.

Accordingly, the Court grants Plaintiff leave to file an amended complaint that (1) omits Claims, 2, 3, 4, and 5 as identified in this memorandum opinion and order; (2) includes Plaintiff's procedural due process claims asserted under 42 U.S.C. § 1983 only against Rhodes in her individual capacity with sufficient facts to overcome the qualified immunity defense and to state such a claim based on both her alleged protected property and liberty interests; (3) includes

Plaintiff's claim under Title VII against THHSC; (4) attaches any attachments referred to in the amended complaint; and (5) provides whatever additional factual allegations Plaintiff deems warranted to further support the claims permitted to be included by this leave of court. At times in response to the motion to dismiss, Plaintiff indicates that her complaint lacks certain factual allegations which support her claims or address Rhodes' qualified immunity. The omitted allegations might cure the pleading deficiencies with respect to the procedural due process claim based on an alleged liberty interest. And additional factual allegations to counter qualified immunity would be beneficial to all parties.

## V. CONCLUSION

For the foregoing reasons the Court **GRANTS IN PART AND DENIES IN PART** *Defendants' Motion to Dismiss Plaintiff's Original Complaint* (ECF No. 12). It grants the motion to the extent Defendants seek to dismiss claims under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and to dismiss certain due process claims under Rule 12(b)(6) as set out herein. It otherwise denies the motion. The Court dismisses the claims with jurisdictional deficiencies without prejudice. It dismisses the claims subject to dismissal under Fed. R. Civ. P. 12(b)(6) with prejudice except as permitted in this memorandum opinion and order. The Court **GRANTS** Plaintiff leave to file an amended complaint in accordance with this memorandum opinion and order **on or before January 7, 2020**. Defendants shall file their answer to the amended complaint within fourteen days after the amended complaint is served on them. If Plaintiff does not file an amended complaint, Defendants answer to the original complaint is due on or before January 21, 2020.

SIGNED this 17th day of December, 2019.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE