# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

**MARY ANN ALVARADO,**

    *Plaintiff,*

**v.**                             **Case No. SA-19-CV-0106-JKP**

**TEXAS HEALTH AND HUMAN
SERVICES COMMISSION (THHSC),
Operating as the San Antonio State
Supported Living Center, et al.,**

    *Defendants.*

## <u>MEMORANDUM OPINION AND ORDER</u>

In this employment case, Plaintiff alleges that her former employer, Texas Health and Human Services Commission ("THHSC"), terminated her employment in retaliation for her taking protected activity. Plaintiff further alleges that her former supervisor, Cheryl Rhodes, violated her procedural due process rights. Before the Court is *Defendants' Motion for Summary Judgment* (ECF No. 72) and *Plaintiff's Motion for Partial Summary Judgment* (ECF No. 74). Plaintiff has filed a response (ECF No. 79) to defendant's motion; Defendant Cheryl Rhodes has filed a response (ECF No. 75) to plaintiff's motion; and Defendants have jointly filed a reply (ECF No. 81) in support of their motion. Both sides have submitted evidence.[1] After considering the motions, related briefing, relevant evidence, and the applicable law the Court grants Defendants' motion and denies Plaintiff's motion as set forth herein.

---

[1] Defendants filed an Appendix (ECF No. 73) with their motion. Plaintiff supports her motion with five attachments containing Exhibits P-1 through P-20. *See* ECF 74-1 through 74-5. The parties each support their responses with exhibits. Plaintiff supports her response with two exhibit groups (Exs. P-1 through P-10). *See* ECF Nos. 79-1 and 79-2. Although these exhibits utilize the same format as her prior exhibits, i.e., P-1, they are different. In the context of cross-motions for summary judgment, parties should bear in mind that courts typically consider the motions together and it is helpful to all involved if parties do not create unnecessary confusion by using the same format for exhibits related to different motions. Defendants' response includes the same Appendix filed in support of their motion. *Compare* ECF No. 73 *with* ECF No. 75-1. For ease of reference, the Court will only cite to the separately filed Appendix of Defendants and will cite to the specific exhibits of Plaintiff by ECF No. and when necessary, the exhibit number.

# I. BACKGROUND

In February 2019, Plaintiff commenced this civil action asserting various claims. *See* Pl.'s Orig. Compl. (ECF No. 3). On December 17, 2019, the Court issued a Memorandum Opinion and Order (ECF No. 31) granting in part and denying in part a motion to dismiss while allowing Plaintiff to amend her complaint in certain aspects. Plaintiff thereafter filed her Second Amended Complaint ("SAC") (ECF No. 39).

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the Civil Rights Act of 1871, 42 U.S.C. § 1983, Plaintiff sues defendants THHSC operating as the San Antonio State Supported Living Center, a political subdivision of the State of Texas, and Cheryl Rhodes. SAC at 1-2, 30-43. Through § 1983, Plaintiff initially asserted procedural and substantive due process violations under the Fourteenth Amendment against Rhodes in her individual capacity, and through Title VII, a retaliatory discharge claim against THHSC. *Id*. ¶¶ 61-93. She initially sought compensatory and punitive damages. *Id.* ¶¶ 94-97.

The Court, however, dismissed the claim for punitive damages, the substantive due process claim, and certain procedural due process claims. *See* ECF No. 58. Thus, at this juncture, Plaintiff only pursues (1) a procedural due process property right claim under 42 U.S.C. § 1983 against Defendant Rhodes in her individual capacity and (2) a Title VII retaliation claim against THHSC. Defendants collectively move for summary judgment on both these claims, while Plaintiff seeks summary judgment on her due process claim. Because Defendants move collectively for dismissal, the Court generally will not distinguish between the defendants when addressing the claims.

# II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material" and

facts are "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over material facts qualify as "genuine" within the meaning of Rule 56 when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Given the required existence of a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. A claim lacks a genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, courts view all facts and reasonable inferences drawn from the record "in the light most favorable to the party opposing the motion." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). Once the movant has carried its summary judgment burden, the burden shifts to the non-movant to establish a genuine dispute of material fact. With this shifting burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn*, 832 F.3d at 234 (citation omitted). Additionally, the courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

An assertion of a "qualified-immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "When governmental employees

assert such defense in a motion for summary judgment, they need only assert the defense in good faith." *Davalos v. Johns*, No. 3:11-CV-0222-P, 2013 WL 1820313, at *3 (N.D. Tex. Apr. 30, 2013) (citing *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)). "They have no burden 'to put forth evidence to meet [their] summary judgment burden for a claim of immunity.'" *Amador v. Wolfe*, No. 5:17-CV-683-JKP, 2020 WL 4043498, at *2 (W.D. Tex. July 17, 2020) (quoting *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633-34 (5th Cir.), *cert. denied*, 121 S. Ct. 171 (2000)), *aff'd*, No. 20-50646, 2021 WL 3889305 (5th Cir. Aug. 30, 2021). Once a governmental employee "invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *accord Brown*, 623 F.3d at 253; *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

### III. TITLE VII RETALIATION

Section 2000e-3(a) of Subchapter VI ((Equal Employment Opportunities) of Title 42 of the United States Code makes it unlawful for an employer to discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Courts use the same "framework for analyzing a retaliation claim . . . as that used in the employment discrimination context." *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001).

Plaintiffs may establish retaliation through either "direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). Because Plaintiff's retaliation claim is based on circumstantial evidence, the *McDonnell Douglas*[2] burden-shifting framework applies. *See Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 466 (5th Cir. 2021). Under

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*McDonnell Douglas*, the plaintiff must first establish the prima facie case for the claim alleged. *Tex. Dep't Cmty. Affairs v. Burdine*, 50 U.S. 248, 252-53 (1981). Once the plaintiff establishes a prima facie case, the defendant bears a burden of production to articulate a legitimate, nondiscriminatory or nonretaliatory reason for the adverse employment action. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 395 (5th Cir. 2002). If the defendant meets this burden, the burden shifts back to the plaintiff who may prove discrimination or retaliation by offering evidence that the defendant's stated reason is pretextual. *Id.*

A prima facie case of retaliation requires the plaintiff to establish (1) participation "in an activity protected by Title VII"; (2) "an adverse employment action" by the employer; and (3) "a causal connection exists between the protected activity and the adverse employment action." *McCoy*, 492 F.3d at 556-57; *accord Lindsley*, 984 F.3d at 466; *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). The third element of the prima facie case requires only that the plaintiff establish "a causal link between the protected activity and [the adverse action]." *Watkins v. Tregre*, 997 F.3d 275, 284 (5th Cir. 2021). This "burden of causation" can be met "simply by showing close enough timing between [the] protected activity and [the] adverse employment action." *Brown v. Wal-Mart Stores E., LP*, 969 F.3d 571, 577 (5th Cir. 2020) (quoting *Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019)).

## A. Factual Background[3]

Plaintiff began working for THHSC in July 2003. App'x 13:8-15.[4] Rhodes "became her second-line supervisor" in November 2014. *Id.* 255, ¶ 3. In late 2016 or early 2017, Rhodes became

---

[3] The facts are viewed in the light most favorable to the nonmovant in accordance with the summary judgment standard. Because only Defendants move for summary judgment on the retaliation claim, the evidence is viewed in the light most favorable to Plaintiff.

[4] When citing to specific lines of deposition testimony within the Appendix and the page of the deposition is the same page as the Appendix, the Court uses the form set out in the body.

aware of issues between Plaintiff and another employee and took unsuccessful steps to develop a better working relationship. *See id.* 256, ¶ 4. Over the following months, Plaintiff was counseled about leadership and issues raised by staff. *Id.* ¶ 5. Because Rhodes was aware of frequent reports that Plaintiff did not get along with coworkers and/or subordinates, Rhodes began "receiving written statements in late November and early December 2017 from Plaintiff's coworkers detailing Plaintiff's unprofessional conduct and negative attitude." *Id.* ¶ 6. Rhodes was also aware of an incident on December 1, 2017, involving Plaintiff keeping two employees beyond a sixteen-hour maximum shift set by federal regulations. *Id.* ¶ 7.

In December 2017, Rhodes commenced the disciplinary process of compiling and reviewing statements from other employees and supervisors, drafting a disciplinary action notice, obtaining appropriate review and input from human resources and legal counsel. *Id.* 257, ¶¶ 8-9. Hearing rumors that she might be fired, Plaintiff met with her first line supervisor, James Nowlin, on or about January 5, 2018. *Id.* 230:11-21. The disciplinary process that began in December 2017 culminated in Rhodes issuing a Disciplinary Action Notice on January 19, 2018. *Id.* 257, ¶¶ 8-9.

Rhodes ultimately terminated Plaintiff's employment. She has averred that she first learned of Plaintiff's claims of discrimination and retaliation when Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") in November 2018. *Id.* 257-58, ¶ 11.

On November 2, 2018, Plaintiff filed her EEOC charge in which she claims retaliation based upon a report of resident abuse in 2015 and further states:

> Prior to my termination [on January 24, 2018], on or about January 5, 2018, I complained to my supervisor, James Nowlin, of the treatment I was receiving from staff because they are [Defendant Rhodes'] friends. As retaliation, [Rhodes] terminated my employment for the incident with the two customers on December 1 as pretext.

ECF No. 79-1 (Ex. P-1). She also states within that EEOC complaint: "I believe I have been harassed and discriminated against because of my race/white and national origin/Hispanic. I also

6

believe that I have been retaliated against because I filed a complaint against Ms. Rhodes, in violation of Title VII of the Civil Rights Act of 1964, as amended." *See id.*

Through deposition testimony, Plaintiff corroborated that she contends that she engaged in protected activity by reporting harassment to James Nowlin on or about January 5, 2018. App'x 222:13-21. When asked what she complained about, she answered:

> There was a lot of stuff. First of all, the staff didn't want to cooperate with doing their job duties, and that made me look bad because they couldn't get done, or just that -- not that it couldn't, they didn't want to do it. And just the staff being so negative and everything. Every time I would say something, they, oh, I'll call Cheryl, go to Cheryl, go to James, go to Cheryl. And I couldn't do anything, I couldn't say anything.

*Id.* 222:22-223:8. She further corroborated that she has claimed retaliation following a report of resident abuse in 2015. *See id.* 228:15-230:10. She also claims that she engaged in protective activity by filing two charges with the EEOC after her termination. *Id.* 226:8-227:1. Finally, she mentions that she told Nowlin that she intended to make a report and her "retaliation claim is in response to . . .her intent to file the complaint with the civil rights office." *Id.* 227:10-14, 228:10-14.

During her deposition she confirmed that she said: "I believe I've been harassed and discriminated against because of my race, white, national origin, Hispanic. I also believe that I've been retaliated against because I filed a complaint against Ms. Rhodes in violation of Title VII of the Civil Rights Act." *Id.* 224:5-12. Although Plaintiff's response to Defendant's motion suggests that she might have said this to Nowlin, *see* ECF No. 79 at 8, her testimony simply confirms that she made that statement in her November 2018 EEOC complaint, *see* App'x 226:8-14.

**B. Defendants' Challenges**

Defendants challenge the prima facie case on two grounds – Plaintiff's failure to engage in protected activity prior to her termination and a lack of a causal link between any alleged activity and her termination. *See* ECF No. 72 at 15. They also assert that Plaintiff's termination was based

upon a legitimate, non-retaliatory reason and that Plaintiff has not carried her burden to show pretext. *See id.* at 20-23. Plaintiff contests each of these challenges.

### 1. Protected Activity

Because there is no causal link between Plaintiff's protected activity occurring after the adverse action, the proper focus is on her pre-termination activities. Furthermore, the Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (per curiam) (citing multiple cases). The above-quoted complaint to Nowlin on January 5, 2018, does not suffice as protected activity. But viewing the evidence in the light most favorable to Plaintiff, her stated intent to file a civil rights complaint appears sufficient to satisfy the protected activity requirement. For purposes of this motion, the Court will assume without deciding that Plaintiff engaged in protected activity when she met with Nowlin and informed him that she intended to file a civil rights complaint.

### 2. Causal Connection

As noted in the prior paragraph, there is no causal link between Plaintiff's post-termination protected activity, i.e., formally filing her two EEOC complaints, and her termination. Furthermore, there is no causal connection between events from 2015 and Plaintiff's termination in 2018. To establish her prima facie case under the facts of this case, Plaintiff must show a causal link between her conversation with Nowlin and her termination. But she fails to do so.

It has long been the law in the Fifth Circuit that protective activity which is unknown to the person taking adverse action cannot form a basis for a retaliation claim; thereby making knowledge that the employee engaged in a protected activity a necessary part of the causal-link element of the prima facie case. *See Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994). Speculation does not satisfy that component. *See id*.

"In order to establish the causal link between the protected conduct and the illegal employment action as required by the prima facie case, the evidence must show that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999). A plaintiff must "produce at least some evidence" the defendant "had knowledge of the protected activity" at the prima facie stage. *Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 883 n.6 (5th Cir. 2003). "If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity." *Id*.

By relying on the temporal proximity between her termination and her meeting with Nowlin, Plaintiff appears to contend that she need not show that Rhodes knew of her protected activity. To be sure, "temporal proximity alone, when very close, can in some instances establish a prima facie case of retaliation." *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007) (relying on *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). When knowledge is not in question, temporal proximity may be sufficient to provide the requisite causal connection. *See Brown v. Wal-Mart Stores E., LP*, 969 F.3d 571, 577 (5th Cir. 2020) (noting in case where "it was well known" that the plaintiff had engaged in protected activity, that "[a]t the prima facie case [stage] a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action"); *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001) (finding "a time lapse of five days" sufficient between adverse action and an employee's testimony at a grievance hearing upon subpoena). As

*Breeden* recognizes, for cases that accept temporal proximity, the required proximity is "between an employer's knowledge of protected activity and an adverse employment action." *See* 532 U.S. at 273. Without knowledge of the protected activity, temporal proximity standing alone is insufficient to show a causal link. Although Plaintiff relies on the fact that the termination occurred within two weeks of her complaint to Nowlin, *see* ECF No. 79 at 11, the absence of knowledge by Rhodes prevents use of temporal proximity to show a causal link as Plaintiff wants.

As multiple sister courts have noted: "Timing alone is insufficient to carry the day." *Dennis v. Joe Myers Ford II, LP*, No. CV H-04-3117, 2005 WL 8166296, at *7 (S.D. Tex. Oct. 21, 2005) (quoting *Martinez v. Prestige Ford Garland Ltd. P'ship*, No. 3:03-CV-251-L, 2004 WL 1194460, at *6 (N.D. Tex., May 28, 2004)). Plaintiff here made no complaint to Rhodes, the supervisor responsible for the termination decision. Plaintiff presents no evidence that Rhodes knew about her complaint to Nowlin. These facts are similar to those in *Dennis*. *See* 2005 WL 8166296, at *7. Under such facts, "[o]nly impermissible speculation could account" for a determination that Plaintiff carried her burden on the causal-link element. *See id.* (quoting *Grizzle*, 14 F.3d at 267).

Because Plaintiff has not shown that Rhodes knew of her complaint to Nowlin, Plaintiff has failed to show a causal connection between her protected activity and her termination. Defendants also argue that Plaintiff's failure to establish a causal link is dictated by the undisputed fact that Rhodes commenced the disciplinary process before Plaintiff engaged in protective active when meeting with Nowlin. ECF No. 72 at 19. This is similar to Rhodes' lack of knowledge regarding the protected activity. But it differs just enough to warrant some brief discussion.

While "the existence of a causal link between protected activity and an adverse employment action is a 'highly fact specific' and difficult question," *Smith v. Xerox Corp.*, 371 F. App'x 514, 520 (5th Cir. 2010) (quoting *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994)), the fact that an employer takes adverse action against an employee one month after learning

of the employee's protected activity "is immaterial" when the employer "concededly was contemplating" the adverse action before knowing of the protected activity, *Breeden*, 532 U.S. at 272. "Employers need not suspend previously planned [adverse actions] upon discovering that [the plaintiff has engaged in protected activity], and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Id*. The Fifth Circuit has recognized that "placement in the disciplinary process prior to [protected activity], while certainly relevant, is not the only consideration" in all cases. *Smith*, 371 F. App'x at 519. *Smith* distinguished *Breeden* on grounds that the plaintiff in *Breeden* had only presented evidence "of temporal proximity." *See id*. at 520.

Here, not only did Rhodes commence the disciplinary process before knowing of any protected activity, but Plaintiff has presented no evidence that she knew of any protected activity before she took the disciplinary action. The facts here do not present any potential suspension of previously planned adverse actions – there simply is not any evidence to even consider such suspension of planned action. Given the failure of Plaintiff to show knowledge on the part of Rhodes, the facts of this case do not require closer consideration of this alternate argument by Defendants.

### 3. Pretext

Furthermore, like *Dennis* and *Martinez*, even if Plaintiff could establish a prima facie case of retaliatory discharge by relying on the temporal proximity of her termination with her protected activity, her claim fails because Defendants have come forward with a nonretaliatory reason for her termination and Plaintiff has not carried her burden to show pretext. Defendants have presented evidence of ongoing work issues involving Plaintiff, including unprofessional conduct, negative attitude, interpersonal issues with coworkers and subordinates, and violations of agency policy. *See* App'x.256, ¶ 6; App'x.266-301 (Ex. B-3, Colleagues' Statements). Evidence of poor work performance satisfies Defendants' burden. *See Feist v. La. Dep't of J.*, 730 F.3d 450, 455 (5th Cir.

2013); *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 685 (5th Cir. 2001).

"After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Feist*, 730 F.3d at 454 (quoting *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007)). For the employee to carry her burden, "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). In other words, the employee carries her burden "by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Feist*, 730 F.3d at 454.

"While this portion of the analysis may seem identical to the 'causal link' step in the prima facie case, the burden here is more stringent." *Medina*, 238 F.3d at 685. In fact, "*Nassar*'s heightened but-for causation requirement applies only in the third step (the pretext stage) of the *McDonnell Douglas* framework." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019). At the prima facie stage, plaintiffs need not show a causal connection that satisfies the "but for" test. *See id*. To avoid summary judgment at the pretext stage, plaintiffs "must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Feist*, 730 F.3d at 454 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)).

When a case "reache[s] the pretext stage, the only question on summary judgment is whether the evidence of retaliation, in its totality, supports an inference of retaliation." *Evans*, 246 F.3d at 355 (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407 (5th Cir. 1999)). "The ultimate question is whether the employer [retaliated], and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 146-47 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)).

As *Martinez* highlights, for a plaintiff to satisfy her burden to show pretext requires more than mere temporal proximity. *See* 2004 WL 1194460, at *6. As the Fifth Circuit has clearly enunciated, "temporal proximity alone is insufficient to prove but for causation." *Strong*, 482 F.3d at 808. When a plaintiff "offers no more support than the temporal proximity between [a] conversation" with a supervisor and her discharge by someone else, the plaintiff has made an insufficient showing that the articulated reasons for discharge are false or that retaliation was the "but for" cause of the adverse action. *See Dennis*, 2005 WL 8166296, at *7. A plaintiff's "own subjective beliefs and conclusory allegations of retaliation" do not suffice. *See id*.

Relying on *Reeves*, Plaintiff argues that she has submitted numerous documents "which immediately cast doubt on [the] proffered reasons for terminating [her]." ECF No. 79 at 12. However, as recognized in *Reeves*, a "factfinder's rejection of the employer's legitimate, non[retaliatory] reason for its action does not compel judgment for the plaintiff." 530 U.S. at 147. Rather, "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id*. At all times, courts must be mindful of the ultimate question – did the employer retaliate against the employee. *See id*. at 146-48.

Given Plaintiff's reliance on *Reeves* and its importance to the issues, *Reeves*'s explanation is worthy of an extensive quotation:

> "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination."

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory [or retaliatory] purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt."

> Moreover, once the employer's justification has been eliminated, discrimination [(or as pertinent in this case, retaliation)] may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated [or retaliated].

*Id*. at 147-48 (quoting *St. Mary's*, 509 U.S. at 511, for block quote and omitting other citations). "[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts with some reason, based his decision on an impermissible consideration." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (cited with approval in *Reeves*, 530 U.S. at 147-48).

Here, the Court will accept without deciding that Plaintiff has cast doubt on at least some aspects of the proffered reason for terminating her. But she certainly has not presented evidence sufficient to reject all legitimate reasons given for her termination.

The Disciplinary Action Notice ("DAN") given to Plaintiff on January 19, 2018, provides detailed reasons for disciplining Plaintiff, including negligence in the performance of duties and failures in meeting written job performance standards, obeying the rules of the agency, and working in harmony with others. App'x 262-65. It also set out various incidents, which "if correct," would constitute proof of work rule violations and continued failure to meet the expectation of [her] position." *Id*. 262. It identifies incidents in October and November 2017 relating to receipts and money taken for outings. *See id*. 262-63. It identifies the incident from December 1, 2017, noted earlier. *See id*. 263. The remainder of the DAN documents the aforementioned ongoing failures of Plaintiff and the violations of multiple work rules. *See id*. at 263-65. Defendants provide added documentation to support the DAN. *See id.* 266-301.

Although Plaintiff contests the accuracy of the October, November, and December incidents, *see* ECF No. 79 at 13-16, the DAN provides ample legitimate reasons to terminate her

14

employment. At no point does she present evidence to show the falsity of all stated reasons. And those she does contest were specifically noted to be possibly incorrect in the DAN. Even if Plaintiff may have cast doubt upon some of the reasons does not carry her burden to show pretext in this case.

Moreover, as mentioned in the prima-facie-case context, Plaintiff has not shown that Rhodes knew of her complaint to Nowlin when Rhodes terminated her. Absent knowledge of Plaintiff's protected activity, Rhodes' actions could not have been taken in retaliation for such protected activity. Further, even if the Court were to accept that plaintiffs may avoid the knowledge issue at the prima facie stage by reliance on temporal proximity (which it does not), plaintiffs cannot satisfy the "but for" test by relying solely on temporal proximity. Given her failure to sufficiently contest the legitimate, nonretaliatory reasons proffered, temporal proximity appears to be all that she can rely upon. And that is simply insufficient.

When considering the ultimate question at the pretext stage – whether Defendants retaliated against Plaintiff – the Court has no reservations in finding that Plaintiff has not carried her burden on that question. Accordingly, Defendants are entitled to summary judgment on this claim.

### IV. PROCEDURAL DUE PROCESS

Defendants also seek summary judgment as to Plaintiff's procedural due process claim asserted under 42 U.S.C. § 1983. They argue that qualified immunity bars this claim and that, in any event, Plaintiff received all the process which she was due. Plaintiff has similarly moved for summary judgment on this claim. There is no significant dispute regarding the facts. The parties instead disagree as to the application of law to the facts.

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks

omitted). "[T]here can be no § 1983 liability unless the plaintiff has "suffered a constitutional violation . . . at the hands of . . . a state actor." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc).

Here, Defendant Rhodes has both invoked qualified immunity as a defense and sought summary judgment outright. As set out earlier, a governmental employee invoking the defense affects the normal burden on summary judgment.

"The doctrine of qualified immunity shields a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts did not violate clearly established constitutional or statutory law of which a reasonable person would have known." *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir.2007); *accord White v. Pauly*, 137 S. Ct. 548, 551 (2017); *Ashcroft v. al-Kidd*, 536 U.S. 731, 735 (2011). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (omitting citations and internal quotation marks).

A government official "merits qualified immunity unless (1) he [or she] 'violated a statutory or constitutional right of the plaintiff' and (2) 'the right was clearly established at the time of the violation.'" *Wilson v. City of Bastrop*, 26 F.4th 709, ___ (5th Cir. 2022) (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citation omitted). And "the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (quoting *Anderson*, 483 U.S. at 640).

16

**A. Undisputed Facts**

An employee handbook, applicable to Plaintiff, provides that a non-probationary employee will not be dismissed for cause absent written notice and an opportunity to comment on or object to the reasons for possible dismissal. *See* ECF No. 74-2 (Ex. P-7). As a fifteen-year employee, Plaintiff is undoubtedly beyond the probationary period.

At approximately 6:00 a.m. on Friday morning, January 19, 2018, Rhodes provided Plaintiff with written notice of possible disciplinary action against her. *See* App'x 262-65 (copy of complete DAN). It informed Plaintiff that Rhodes had "conducted a facility investigation" into concerns about Plaintiff's work performance. *Id*. 262. It identifies eight individuals who provided written statements. *Id*. Although the DAN states that "[t]he content of these statements are available for your review and are included herein in their entirety by reference for any and all purposes," *id*., the statements were not provided with the notice, id. 32:12-13. Plaintiff did not request to review them with Rhodes or anyone else at that time. *Id*. 32:20-33:3.

Along with Plaintiff's first line supervisor, James Nowlin, Rhodes met with Plaintiff for about "30 minutes" discussing the matters presented in the DAN. *Id*. 138:4-6; 257, ¶ 9. Through the DAN, Rhodes recited the incidents and work performance issues leading to its issuance. *Id*. 262-64. The notice specifically discussed evidence from two identified employees, Nowlin and Velina Thomas, while also relating aspects of complaints by others without specifically connecting them to the complaints. *See id*. Plaintiff had two days – until 6:00 a.m. on Sunday, January 21, 2018 – to file a written rebuttal. *Id*. 265. She was also informed that she "cannot be at the office during this time." *Id*.

At 6:00 a.m. on January 21, 2018, Plaintiff personally delivered a seventeen-page written rebuttal to Rhodes at the entrance gate of the THHSC facility. *See id*. 302-18 (copy of rebuttal). Although she could have contacted Rhodes or others regarding her rebuttal, she prepared it herself

and felt she did not need any feedback from anyone. *Id*. 88:8-89-4. Three days later, Rhodes terminated Plaintiff's employment and notified her of her ability to commence a grievance process consistent with THHSC policy. *See id*. 319 (copy of Disciplinary Action Decision). Within that decision, Rhodes states that she decided to terminate Plaintiff's employment after reviewing the rebuttal. *See id*. Rhodes reiterated that in a declaration supporting summary judgment. *See id*. 257.

Plaintiff pursued the grievance process, and on September 25, 2018, she received an adverse final order on her grievance. *See id*. 321-27 (letter and copy of final decision). She had two grievance hearings spanning three days. *See id*. 236:14-23. She was represented by counsel. *See id*. 236:24-237:1. She received a revised disciplinary action notice at her hearing. *Id*. 234:11-13. The revised notice added more names to the investigation. *Id*. 237:2-15. They connected certain complaints to specifically listed coworkers. *See id*. 237:23-239:20. At the hearing, Plaintiff was able to question witnesses and Plaintiff testified. *See id*. 240:11-241:6.

**B. Analysis**

"The due process clause protects against arbitrary deprivation of both property and liberty interests." *Wells v. Doland*, 711 F.2d 670, 675 (5th Cir. 1983). "To state a Fourteenth Amendment due process claim under § 1983, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)).

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). It is not the deprivation itself which is unconstitutional; instead, "what is unconstitutional is the deprivation of such an interest without due process of law."

*Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

Procedural due process requires "some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his [or her] employment." *Loudermill*, 470 U.S. at 542 (citation and internal quotations omitted). But a "pretermination 'hearing,' though necessary, need not be elaborate." *Id*. at 545. "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) (quoted with approval in *Loudermill*).

"[I]n the context of public employment . . . the pretermination hearing need not definitively resolve the propriety of the discharge." *Loudermill*, 470 U.S. at 545. It instead acts as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id*. at 545-46. The Supreme Court summarized the requirements:

> The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id*. at 546 (citations omitted).

Subsequent to *Loudermill*, the Fifth Circuit recognized that, when "a governmental employer provides a full post-termination hearing, pretermination due process is limited." *Browning v. City of Odessa, Tex.*, 990 F.2d 842, 844 (5th Cir. 1993). Indeed, *Loudermill* expressly noted that its "holding rests in part" on state law providing "for a full post-termination hearing." 470 U.S. at 546. The Fifth Circuit then found that the plaintiff had "received a pretermination hearing which complied with [the *Loudermill*] due process requirements," when "[h]e was given notice of the

proposed dismissal, informed of the reasons for that dismissal, and given an opportunity to re-spond." 990 F.2d at 844. While "the meeting between [employer and employee] lasted no more than thirty minutes, the Due Process Clause required nothing more since a full evidentiary post-termination hearing was available." *Id*. at 844-45.

Plaintiff states that no pretermination hearing was conducted. ECF No. 79 at 3. But the meeting between her and Rhodes satisfies the requirements of due process as interpreted by the Supreme Court and the Fifth Circuit. It is undisputed that Rhodes provided Plaintiff notice of pro-posed disciplinary action, discussed the reasons for the proposed discipline, and was given an op-portunity to respond. Plaintiff participated in the meeting and could have requested the documents relied upon. Although the notice erroneously indicated that the documents were included, such omission does not offend the minimum requirements of due process. Plaintiff was provided a full post-termination hearing to which she availed herself.

Relying on *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970), Plaintiff contends that min-imum due process requires that she "be advised of the cause for [her] termination in sufficient detail so as to enable [her] to show any error that may exist" and "of the names and testimony of the witnesses against [her]." ECF No. 74 at 6. She contends that the notice provided to her fails to conform to this standard because it alluded to unspecified incidents and was simply too overgen-eralized to provide minimal due process protections. The notice also lacked the supporting docu-mentation that was stated to be attached.

Plaintiff asks too much of the minimal protections afforded by the Due Process Clause. Despite the omission of the supporting documentation, the notice provided to her contained suffi-cient detail of the cause for her termination. It identified the names of witnesses and the nature of their complaints against her. Although the notice did not connect any specific allegation to any particular witness except as to Nowlin and Velina Thomas, the Court finds the notice sufficient

20

under *Loudermill* and *Browning*, which followed *Loudermill*. The Court does not read *Ferguson* as requiring more than this binding precedent, but to the extent it does, *Loudermill* and *Browning* control.

And if the Court would find a due process violation on the facts of this case, it would find that Rhodes is nevertheless entitled to qualified immunity protection because the violation was not clearly established when she took the disciplinary action against Plaintiff. Even assuming a due process violation, the Court finds the actions of Rhodes objectively reasonable on the facts of this case.

In summary, Plaintiff has not shown that Rhodes' conduct violated her due process rights. And if the Court were to find otherwise, Plaintiff has not shown that the conduct violated a clearly established right when taken. Rhodes is entitled to qualified immunity and Plaintiff's motion for summary judgment fails. Further, based on their motion, Defendants are entitled to summary judgment on the due process claim.

## V. CONCLUSION

For the foregoing reasons the Court **GRANTS** *Defendants' Motion for Summary Judgment* (ECF No. 72) and **DENIES** *Plaintiff's Motion for Partial Summary Judgment* (ECF No. 74). Defendants are entitled to summary judgment on the two remaining claims against them. Accordingly, by separate document, the Court will issue a Final Judgment to dismiss this action.

**IT IS SO ORDERED this 9th day of March 2022.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**